UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01548-WYD

TANYA R. BUTLER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33 and 1380-83.  For the reasons stated below, this case is reversed and remanded for further factfinding.

II.    <u>FACTUAL BACKGROUND</u>

Plaintiff filed applications for benefits in April 2005, alleging that she was disabled beginning in October 2004 due to combined medical conditions, including a brain tumor, depression, anxiety, panic attacks, fibromyalgia, back pain, joint paint, asthma, and dizziness.  (Administrative Record ["R."], 118-19, 302-12.)  Her opening brief alleges that Ms. Butler suffers from extreme obesity.  She is 5'2" in height and her weight has fluctuated between 280 and 325 pounds.  (*Id.* 297).  Plaintiff also has a

history of mental problems; she applied for disability benefits following a suicide attempt in which she took an overdose of sleeping pills. (*Id.* 159,161, 312.)

The Colorado Disability Determination Services ["DDS"] denied Plaintiff's claims at the initial determination stage. (R. 46, 281.) A video hearing was held on May 18, 2007, before an Administrative Law Judge ["ALJ"] from Fargo, North Dakota. (*Id.* 291-330.) Plaintiff was born in November 1967 and was 39 years old on the date of the hearing. (*Id.* 296). She attended two years of college and received a medical assistant and phlebotomy certificate. (*Id.* 297.) Plaintiff worked as a medical assistant and phlebotomist for 12 years. (*Id.* 300.) Plaintiff testified that she thought she last worked in November 2004, but was uncertain. (*Id.* 299.)

In a subsequent written decision dated August 11, 2007, the ALJ concluded at step five of the sequential evaluation that Plaintiff was not disabled from October 13, 2004 through the date of the decision. (R. 28-44.) This decision is discussed in more detail below. The Appeals Council declined review of the ALJ's decision (*id.* 6), and this appeal followed. Thus, the ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.   ANALYSIS

    A.   The ALJ's Decision

The ALJ found at step one that Plaintiff meets the insured status requirements through June 30, 2010. (R. 31). He also found that Plaintiff had not engaged in substantial gainful activity since October 13, 2004, her alleged onset date. (*Id.*)

At step two, the ALJ determined that Plaintiff had the following severe impairments: a history of pituitary adenoma, morbid obesity, affective disorder, and an

-2-

anxiety-related disorder. (R. 32.) He found that Plaintiff's fibromyalgia, arthritis, vertigo, asthma, and alleged seizures and tremors were not severe. (*Id.* 32-34.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, subpart P, Appendix 1. (R. 34.) In making this determination, the ALJ considered Plaintiff's obesity. (*Id.*) The ALJ also considered the "B criteria" of the PRTF. (*Id.* 34-35.) The PRTF indicated that Plaintiff had no difficulties in maintaining social functioning and only mild restriction of activities of daily living, which the ALJ found consistent with the evidence of Plaintiff's numerous daily activities. (*Id.* 35, 261.) While the PRTF indicated moderate difficulties in maintaining concentration, persistence, or pace, the ALJ found significant Plaintiff's testimony that she uses a computer periodically for 15 to 30 minutes at a time, responds to e-mail, and belongs to an internet abuse-survivor group. (*Id.* 35.) The ALJ explained that "[t]his requires concentration, persistence, and pace, as does her household chores". (*Id.*) Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation; thus, the B criteria were thus not satisfied and Plaintiff did not meet a listing. (*Id.*)

The ALJ determined that Plaintiff had the residual functional capacity ["RFC"] "to perform light work (lift and/or carry 20 pounds occasionally and 10 pounds frequently), stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday) except she can only frequently climb, balance, stoop, kneel, crouch and crawl, and must avoid even moderate exposure to unprotected heights and moving mechanical parts." (R. 35-36.) "Mentally, the claimant retains the ability to understand, remember and carry out 1 to 2-step instructions, interact appropriately with supervisors

on an occasional basis and with co-workers and the general public on a brief and superficial basis, respond appropriately to changes in a routine work setting, and make judgments on simple work-related decision." (*Id*. 36.)

At steps four and five, the ALJ found that Plaintiff could not perform her past relevant work but that she could perform other work existing in the national economy. (R. 42-44). The vocational expert testified that a person with Plaintiff's RFC could perform "the requirements of representative occupations such as housekeeping cleaner", price marker, and small products assembler. (*Id*. 43.) Based on the testimony of the vocational expert, the ALJ concluded at step five that Plaintiff was not disabled from the alleged onset date through the date of the decision. (*Id*.)

B.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

        C.      <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

Plaintiff argues that new evidence submitted to the Appeals Council was material and relevant to the period considered by the ALJ and that the Appeals Council erred in declining to consider this evidence. She also argues that the evidence does not support the ALJ's assessment of Plaintiff's RFC, including the impact of Plaintiff's obesity, and that the ALJ failed to properly evaluate medical source opinion and Plaintiff's credibility. Finally, Plaintiff argues that the ALJ's conclusion at step five is not supported by substantial evidence because both the RFC and resulting hypothetical question were deficient. I address these arguments below, starting with the ALJ's assessment of the medical evidence and Plaintiff's RFC.

        1.      <u>Whether the ALJ Erred in Assessing the Medical Evidence in Connection with Plaintiff's RFC and Her Credibility</u>

I first agree with Plaintiff that the ALJ did not properly evaluate the medical source opinions and that a remand to the Commissioner is required on this basis. I note in that regard that an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

As to a medical provider who is not an acceptable medical source, such as nurse Alvarez, the ALJ is still required to consider his or her opinion and to provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)). This is true even as to opinions regarding issues reserved to the Commissioner, such as the claimant's ability to work. *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002).[1] Information from these sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function" and may even at times outweigh the opinion of an acceptable medical source. SSR 06-03p, 2006 WL 2329939, at *2-4 (2006); *see also Carpenter v. Chater*, 537 F.3d 1264, 1267-68 (10th Cir. 2008).

In the case at hand, the ALJ rejected the opinions of examining doctor Stuart Smith, M.D. and Vickie Moore Alvarez, RN, MSN, CS, based primarily on his finding that their opinions were based on Plaintiff's subjective complaints. (R. 40, 41.) He further found that their opinions were not well supported by medically acceptable clinical and laboratory diagnoses. (*Id.*) I find error with these findings. As to Dr. Smith, he made specific medical diagnoses which the ALJ improperly discounted. Nurse Alvarez did the same, and stated symptoms that she observed from her treatment relationship with Plaintiff. (*Id.* 191-221.) The Tenth Circuit holds that a medical provider's statements about Plaintiff's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence. *Washington*, 37

---

[1] Citations to this and other unpublished opinions in this Order are made because I find that the opinions have persuasive value with respect to a material issue that has not been addressed in a published opinion.

F.3d at 1439.  In *Washington*, the Tenth Circuit held that it was error to reject the opinions of medical providers because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that Plaintiff's condition deteriorates under stress is a specific medical finding.  *Id.*  The ALJ made the same legal error in this case.

Further, it was error for the ALJ to reject the opinions of Dr. Smith and Nurse Alvarez based on the fact that he believed their opinions were based on Plaintiff's subjective complaints.  "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot reject [a medical provider's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the medical provider]."  *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th Cir. Sept. 2, 2005); *see also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. July 13, 2006).

In this case, the record does not support a finding that the medical providers' opinions were based on Plaintiff's subjective complaints alone.  Instead, it appears that their opinions were based on their examination of the Plaintiff, the medical records in the case and/or their treatment relationship with Plaintiff.  "[A] psychological opinion . . . 'may rest either on observed signs or on psychological tests.'"  *Thomas*, 2005 WL 2114163, at *4.  Further, Dr. Smith specifically referred to conditions of Plaintiff which were documented in the system.  (R. 223.)  In choosing to reject Dr. Smith's and Nurse Alvarez's opinions on this basis, the ALJ made speculative inferences from his report.

This was improper, as an ALJ may not reject a treating physician's opinion based on his credibility judgments, speculation, or lay opinion. *Langley*, 373 F.3d at 1121.

The ALJ also found the opinions of Dr. Smith and Nurse Alvarez were inconsistent with other substantial evidence in the record and the objective medical evidence. However, he erred in that he did not cite what evidence he was relying on for that opinion. Further, while he stated that he gave "little weight" to their opinions (R. 41), it appears that he gave them no weight. "[A]n ALJ must give good reasons . . . for the weight assigned to a [medical providers] opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'" *Robinson*, 366 F.3d at 1082 (quotation omitted). In *Robinson*, the court found error where "it [wa]s obvious from the ALJ's decision that he did not give [a doctor's] opinion controlling weight" but "the ALJ never expressly stated that he was not affording it controlling weight." *Id.* at 1083.

The ALJ further found that the opinions of Dr. Smith and Nurse Alvarez were "conclusory without any specific limitations of the claimant's abilities." (R. 40.) However, there is no evidence that these providers were asked to express specific limitations of Plaintiff's abilities. Their opinions are still relevant and must be properly weighed as to the nature and severity of Plaintiff's mental health impairments.

Finally, the ALJ stated as a basis to reject Dr. Smith's and Nurse Alvarez's opinions that they failed to take into account certain inconsistencies noted by the ALJ. (R. 40-41.) The fact that the ALJ found certain inconsistencies may be relevant to the credibility assessment of Plaintiff but does not provide a basis to allow him to reject medical opinions absent contrary evidence in the record. *See Langley*, 373 F.3d at

-8-

1121. Further, Nurse Alvarez specifically noted that Plaintiff had good days and bad days (R. 131-221), and there is no reason for the ALJ to conclude that she did not take into account Plaintiff's claims of panic attacks and activities in expressing her opinions.

I also note as to the opinions of Dr. Smith and Nurse Alvarez that the ALJ failed to consider to what extent their opinions were consistent with each other and with other mental health providers. For example, Ms. Alvarez's opinion as to Plaintiff's mental diagnoses and functioning was consistent with the treatment that Plaintiff's primary care physician prescribed for her mental condition while she was attempting to obtain mental health care. (R. 267-76.) It is also consistent with the opinions of Mr. Pruet, discussed below in Section 3, *infra*, and to some extent the opinions of the DDS examiner who found that Plaintiff had certain moderate impairments in her mental health (*Id.* 248-49.) The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265 (quotation omitted). Further, an ALJ "must evaluate 'all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'" *Id.* at 1269 (quotations omitted).

This brings up another problem with the ALJ's weighing of the evidence. The ALJ cited the RFC assessments of the non-examining DDS consultants (R. 41) and appeared to essentially adopt their RFC findings (although improperly omitting certain impairments in the mental health assessment as discussed below). However, he did not expressly state the weight he gave to their opinions or discuss what specific evidence supported his RFC assessment. (*Id.* 41-42.) This is error. *See Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005) (remanding

the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC).

While the ALJ noted that the RFC finding is supported by the objective medical evidence and the record as a whole, the only evidence I found in the record to support the RFC was that of the non-examining DDS examiners. Even the ALJ noted, however, that he could give their opinions "probative weight" only "*if their opinions/assessments are consistent with the record as a whole.*" (R. 41.) No evidence was ever cited that supports the non-examining providers' opinions. Accordingly, I find that the ALJ erred in connection with his weighing of their opinions and the other medical evidence.

I also find that the ALJ did not properly assess Plaintiff's credibility which impacts the RFC analysis. "'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quotations omitted).

In the case at hand, I find that the ALJ erred in several respects in assessing Plaintiff's credibility and mischaracterized the evidence. For example, the ALJ found that Plaintiff was not credible because after her suicide attempt in October 2004, she attempted for a short time to continue working. (R. 39.) However, the medical evidence shows that Plaintiff's mental symptoms continued until she finally resigned from her job.

(*Id.* 192, 206.)  Further, this court has held that a claimant's "persistent attempts to work with her impairments serve to bolster her credibility", not undermine credibility.  *Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2007).

The ALJ also mischaracterized Plaintiff's daily activities, implying that her activities are at a substantial enough level to allow for full-time work.  For example, he found that Plaintiff's ability to occasionally wash laundry, accompany relatives to run errands, or use the computer was inconsistent with disabling symptoms.  (R. 39.)  The record shows, however, minimal daily activities.  (*Id.* 315-319, 126-131.)  The ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling symptoms.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987).

The *Talbot* case is instructive both as to Plaintiff's efforts to work and as to her activities.  In that case, the Tenth Circuit found:

> The ALJ's conclusion that the claimant had been performing light and sedentary work on a regular and continuing basis after October 10, 1981, is highly questionable. Uncontradicted information in the record as to the claimant's activities suggests the contrary, and nowhere does the ALJ suggest that this information was discounted by him as unreliable. The record reveals that the claimant tried to do a little painting work and installation of a shower on a contractual basis, as well as to assume a traveling sales job. However, the record also indicates that he was unable to finish or keep these jobs because of his blackouts and strength limitations and that he was never paid for any of these attempts. Also, the record reveals that the claimant's daily routine was extremely limited. He occasionally drove his wife three miles to the grocery store on back roads, and he tried to walk around his yard every day, but he seldom engaged in any other activity in or outside his home. He could no longer hunt or fish, and even sweeping the floor of his home tired him out, so that he was not able to help his wife with domestic chores. To call such nongainful activity

> regular and continuous light and sedentary work would seem to defy the record.
>
> * * *
>
> Here, any reasonable reading of the record could not result in use of the claimant's limited activities to enhance any medical testimony that might support such a finding.

*Id.* at 1462, 1463.

In this case, as in *Talbot*, Plaintiff's statements, testimony and activities as noted by her medical sources reflect a constricted lifestyle. The limited activities that she engaged in do not show that she has the RFC for work activity on a regular and continuing basis nor are they a basis to conclude that Plaintiff's allegations of pain, fatigue and other impairments are not credible.

The ALJ also improperly used Plaintiff's minimal activities as a basis to reject medical opinions. The ALJ concluded, for example, that Plaintiff has moderate difficulties in concentration, persistence or pace (R. 35), consistent with the DDS mental health assessment which found Plaintiff was moderately limited in this and other areas. However, the ALJ then went on to find that her testimony that she uses her computer periodically for 15 to 30 minutes at a time, that she responds to email and that she belongs to a survivor-of-child abuse group "requires concentration, persistence, and pace, as does her household chores." (*Id.* 35, *see also* 39.) He ultimately did not include the moderate limitations found by the DDS physician in the RFC. The ALJ thus made an improper lay judgment about the impact of Plaintiff's activities on her mental health impairments. In so doing, he chose not to adopt the express findings of the DDS examiner regarding moderate impairments that he said he gave weight to. This is error.

*See Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007); *Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. Feb. 8, 2005).

In *Confere*, as here, the ALJ's RFC reflected some of the limitations identified by the state agency physicians, but not others. The RFC did not include the findings that the claimant had marked difficulties in certain areas and moderate impairments in other areas. *Id.*, 2007 WL 1196520, at *3. The hypothetical question that the ALJ relied on also did not include these impairments. The Tenth Circuit remanded with instructions to remand to the agency for additional proceedings. *Id.* In so doing, it held:

> the ALJ should have explained why he rejected four of the moderate restrictions ... while appearing to adopt others. An ALJ is not entitled to pick through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. Although ... the ALJ is entitled to resolve any conflicts in the record, the ALJ did not state that any evidence conflicted with [the treating physician's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the] restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.

*Id.* at 704.

In other words, the Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ erred in not including these impairments in his RFC and in making improper lay judgments about those impairments based on Plaintiff's activities. *See Carpenter*, 537 F.3d at 1267.

The ALJ also found Ms. Butler was not credible because she had not seen Nurse Alvarez for two months prior to her suicide attempt and had thus failed to get treatment. (R. 40.) The ALJ failed, however, to consider Plaintiff's claims, documented in the medical record, that she could not afford medical care. (*Id.* 191, 274, 313.) Indeed,

-13-

Nurse Alvarez wrote a letter on Plaintiff's behalf indicating that Plaintiff was having trouble paying bills and requesting that she have access to reduced or free medication and counseling programs. (*Id.* 191.) The ALJ erred in failing to consider this. *See* SSR 96-7p, 1996 WL 374186, *7-8 (1996). Further, the ALJ failed to mention that Plaintiff stopped going to Nurse Alvarez due to a conflict with work hours. (R. 157.) He thus erred in so selectively applying the evidence regarding Plaintiff's decision to stop receiving treatment. *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999) ("[w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases).

The ALJ also failed to address Ms. Butler's medication side effects (R. 39-41), despite noting her testimony that they made her groggy, sleepy, and upset her stomach (*id.* 38), and documentation that certain medications were ineffectual or caused adverse side effects. (*Id.* 192, 198, 238, 267, 269-74). Indeed, Nurse Alvarez's progress notes document the fact that different medications were introduced with varying results, and problems that Plaintiff had with her medications. (*Id.* 192-221.)

Further, I find that the ALJ failed to do a proper analysis of Plaintiff's pain and fatigue. Related to that argument, I find that the ALJ failed to properly assess Plaintiff's fibromyalgia at step two, which impacted the RFC finding. It is undisputed that Plaintiff has been diagnosed with fibromyalgia (*id.* 33, 270, 272), which is a condition that causes pain, stiffness and fatigue. *Moore v. Barnhart*, No. 03-3243, 2004 WL 2634571, at *8 (10th Cir. Nov. 19, 2004). The ALJ found that Plaintiff's fibromyalgia was not severe, relying on objective tests or findings that were normal (*i.e.*, "no apparent inflamed joints", "normal range of motion"). (R. 33.) This was error, as fibromyalgia is

not diagnosed in such a manner. *See id.*; *Gilbertson v. Astrue*, No. 06-1137, 2007 WL 1068104, at *4-5 (10th Cir. April 11, 2007). The ALJ clearly misunderstood the nature of fibromyalgia and thus erred in failing to properly consider it at step two and beyond in connection with the limitations it might cause Plaintiff. *Id.*[2]

I also note that at step two the ALJ considered Plaintiff's impairments individually to determine whether they were sufficiently severe to limit her ability to do basic work activities. This was error. On remand, the ALJ's step two analysis "must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'" *Carpenter*, 537 F.3d at 1266 (quoting *Langley*, 373 F.3d at 1123-24). This would include, for example, an analysis of the combined effect of Plaintiff's tremors, seizures, and panic attacks along with her pain, fatigue and other impairments.

The ALJ also made improper lay opinions and speculative inferences from medical reports in choosing to reject fibromyalgia as a severe impairment. For example, he acknowledged that while the medical records documented fibromyalgia with multiple tender points", he found that the fact the record also referred to "non-fibromyalgia trigger points" which "weigh against the credibility of her alleged limitations due to fibromyalgia." (R. 33.) Further, he found without support that "[t]he recommendation for low intensity exercise is not consistent with the claimant's allegations of pain as described at the hearing" as is the fact that she did not have

---

[2] Case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *2 (10th Cir. Dec. 8, 2004). "[A] claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id*. The ALJ clearly did not apply that standard in assessing the fibromyalgia.

physical therapy. (*Id.*) The ALJ also found that when Plaintiff was discharged from the hospital in October 2004 she did not have any physical complaints (*id.*), ignoring all the other record evidence of pain and other symptoms. He also found significant the fact that Plaintiff did not recall exactly when she was diagnosed with fibromyalgia (*id.*), but this does not provide a basis to reject the medical evidence regarding this condition.

Finally, on remand, the ALJ shall also consider the impact of Plaintiff's obesity. Plaintiff reported having problems standing, pain in her joints, asthma and fatigue (R. 270, 272), conditions which could reasonably exacerbated by obesity..

### 2. Whether the ALJ's Conclusion at Step Five is Supported by Substantial Evidence

Since I am remanding this case for a reassessment of Plaintiff's RFC, the findings at step five may also be impacted and need to be reassessed. I further note that even without the remand, the step five determination is not supported by substantial evidence. As discussed in the previous section, the ALJ did not include in his RFC the moderate impairments found to exist regarding Plaintiff's mental health diagnoses. The hypothetical question to the ALJ also did not include these impairments. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant"s impairments cannot constitute substantial evidence to support the [Commissioner"s] decision. *Hargis*, 945 F.2d at 1492 (citation omitted).

### 3. Whether the Appeals Council Erred in Declining to Consider the New Evidence Submitted by Plaintiff

Finally, Plaintiff argues that the Appeals Council erred in declining to consider the evidence from Brannon Pruet, M.A. on the basis that he began seeing her several days after the date of the ALJ's decision. (R. 7.) This evidence, in the form of medical

records from Mr. Pruet dating from August 23, 2007 to October 24, 2007, was provided to the Appeals Council on December 7, 2007.  (*Id.* 13-19.)  Plaintiff contends that a remand is appropriate because Mr. Pruet's mental health treatment records are material to the ALJ's determination of Plaintiff's RFC and Plaintiff asserts that they would change the outcome of the Commissioner's decision.

I find that this evidence should be considered on remand.  Mr. Pruet's treatment of Plaintiff began just days after the ALJ issued his decision and relates directly to the severe mental impairments which the ALJ found Ms. Butler had.  Further, it is consistent with other evidence, including that of Nurse Alvarez and Plaintiff's general practitioner who was prescribing medication to treat her mental symptoms.  (R. 267-76.)  While the proffered evidence must generally relate to the time period for which the benefits were denied, the evidence is so close in time to that period that I find it is relevant.  Further, Plaintiff asserts that the evidence did not exist at the time of the ALJ's decision because Ms. Butler could not afford to pay for medical treatment and she had difficulty accessing low cost or free mental health care.  (*Id.* 16-19, 274.)

III.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.  It is therefor

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 21, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge